STATE *vs.* CHARLES HOOD.

*Criminal Law—Cheating—Indictment—Common Law—Definition —Cheating by Using False and True Penknife.*

1. In an indictment for cheating it is incumbent upon the State to show that the offense was of a nature not only to deceive the particular individual, but that it was one against which common prudence and care are not sufficient to guard.

2. If the defendant, either by himself or in collusion with another, obtained from the prosecuting witness certain money by using a false or trick penknife in con-

nection with a true penknife, and in such a way as would deceive men of common prudence and care, it would be of such a character as to deceive people generally, and would come within the common law definition of cheating, and constitute an indictable offense.

*(November 21, 1901.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Horace G. Eastburn* for the State.

*Charles F. Curley* for the defendant.

Court of General Sessions, New Castle County, November Term, 1901.

INDICTMENT FOR CHEATING (No. 23, November Term, 1901).

LORE, C. J., charging the jury:

Gentlemen of the jury:—1t is charged in the indictment "That Charles Hood, late of Wilmington Hundred, in the county aforesaid, on the nineteenth day of October, in the year of our Lord one thousand nine hundred and one, with force and arms at Wilmington Hundred, in the county aforesaid, being then and there a person of dishonest conversation, and a common deceiver, at the county and hundred aforesaid, on the day aforesaid, contriving, practicing, and falsely, fraudulently and deceitfully intending one John Lucas, with a certain true penknife and a certain false or trick penknife, and with false or fraudulent use of the same, falsely, unlawfully, unjustly, fraudulently and deceitfully, to deceive and defraud, and from the said John Lucas, by means of the said false or trick penknife and the said true penknife and false use of the same, craftily and subtly, falsely, fraudulently and deceitfully, different sums of money to acquire and obtain, then and there did solicit, incite, provoke and procure the said John Lucas to bet and wager certain paper money, the kind and denomination of which

are to the jurors unknown, of the aggregate value of two dollars lawful money of the United States of America, certain coins, the kind and denomination of which are to the jurors unknown, of the aggregate value of two dollars, like lawful money as aforesaid, the said bet or wager to be contingent upon the ability of him, the said John Lucas, to open the said true penknife, which had then and there been displayed to him, the said John Lucas, by the said Charles Hood, and that the said Charles Hood did then and there, with force and arms, falsely, fraudulently and deceitfully substitute the said false or trick penknife for the said true penknife, by means whereof, and by the false use thereof, he, the said Charles Hood, subtly, fraudulently, falsely and unlawfully did receive, have and obtain into his own hands and possession," said sum of money.

In order to convict the defendant, it is incumbent upon the State to show that the offense was of a nature not only to deceive the particular individual, but that it was one against which common prudence and care are not sufficient to guard.

We go back to common law to ascertain what is cheating, for the common law defines the same. In order to describe to you what character of acts come within the designation of cheating, I will read to you from *3 Greenleaf on Evidence, (13th Edition), Section 84:*

"The indictment for this offense, *at common law,* must show, and of course the prosecutor must prove, *first,* that the offense was of a nature to affect not only particular individuals, but *the public at large,* and *against which common prudence and care are not sufficient to guard.* Hence it was held indictable for common players to cheat with false dice; and for a person to pretend to have power to discharge soldiers, thereupon taking money from them for false discharges. So, obtaining an order from the court to hold to bail by means of a false voucher of a fact, fraudulently produced for that purpose; furnishing adulterated bread to the government, for the use of a military asylum; and selling army bread to the govern-

ment by false marks of the weight, fraudulently put on the barrels' have been held indictable offenses at common law."

So that you have the crime clearly defined. If the prisoner, either by himself or in collusion with another, did obtain from this prosecuting witness certain money by using a false or trick penknife in connection with a true penknife, and in such a way as would deceive men of common prudence and care, then it would be of such a character that it would deceive people generally, and would come within the common law definition and would be an indictable offense.

Verdict not guilty.